**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | No. 19-cv-1333 ABJ |

## **DEFENDANTS' SUPPLEMENTAL BRIEF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 2

    I.    THE PRA'S BAR ON JUDICIAL REVIEW MAKES PLAINTIFFS' CLAIMS UNREDRESSABLE AND APPLIES REGARDLESS OF THE NATURE OF THE ALLEGED DUTIES INVOLVED AND REGARDLESS OF THE IDENTITY OF THE DEFENDANT ................. 2

    II.   EVEN ASIDE FROM THE PRA BAR, PLAINTIFFS' CLAIMS FOR MANDAMUS AND DECLARATORY RELIEF ARE NOT REDRESSABLE ................................................................................... 4

        A.    Plaintiffs Lack Standing To Seek Declaratory or Mandamus Relief Against the President ............................................ 4

        B.    Declaratory Relief Against the President Is Unavailable Absent Mandamus Jurisdiction, Regardless of Whether PRA Duties Are Ministerial or Executive ................................................... 5

        C.    Relief Against EOP Is Also Unavailable ........................................ 8

CONCLUSION ........................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758 (D.C. Cir. 1980) ........................6

*Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ..................................................... 5-6

*\*Armstrong v. Bush* ("*Armstrong I*"), 924 F.2d 282 (D.C. Cir. 1991) ........................1, 2, 3

*\*Armstrong v. Exec. Office of the President* ("*Armstrong II*"),
    1 F.3d 1274 (D.C. Cir. 1993) ................................................................................2

*Armstrong v. EOP* ("*Armstrong III*"), 90 F.3d 553 (D.C. Cir. 1996) ................................9

*Clinton v. City of New York*, 524 U.S. 417 (1998) ..............................................................6

*Consol. Edison Co. v. Ashcroft*, 286 F.3d 600 (D.C. Cir. 2002) ........................................7

*\*CREW v. Trump*, 924 F.3d 602 (D.C. Cir. 2019) ........................................................2, 10

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ..........................................8

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ....................................................4, 5, 8, 9

*Lovitky v. Trump*, No. 19-cv-1454, 2019 WL 306844 (D.D.C. July 12, 2019),
    *appeal pending*, No. 19-5199 (D.C. Cir.) ......................................................5, 7, 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................3

*Marbury v. Madison*, 5 U.S. (1 Cranch.) 137 (1803) ........................................................7

*Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1866) ....................................................4, 7

*Nat'l Treasury Employees Union v. Nixon*,
    492 F.2d 587 (D.C. Cir. 1974) ("*NTEU*") ....................................................5, 6, 7

*\*Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010) ........................................4, 5, 6, 8, 9

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) ..........................................5

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) ........................................................4, 5, 9

**Statutes**

Presidential Records Act of 1978 ("PRA"), 44 U.S.C. §§ 2201–2209 ...........................1, 2

44 U.S.C. § 2203 ................................................................................................2, 7

**INTRODUCTION**

Defendants submit this supplemental brief pursuant to the Court's Minute Entry of November 18, 2019, in order to address (1) whether Plaintiffs have standing to pursue declaratory or mandamus relief against the President; (2) whether the duties under the Presidential Records Act ("PRA") that Plaintiffs allege have been violated are ministerial or official/executive, and whether that distinction matters to determine whether the Court can issue a declaratory judgment against the President; and (3) whether Plaintiffs' alleged injuries would be sufficiently redressed by issuing the requested remedies against the Executive Office of the President ("EOP"). As an initial matter, these issues are subsumed within the D.C. Circuit's prior holding in *Armstrong v. Bush* ("*Armstrong I*"), 924 F.2d 282 (D.C. Cir. 1991), that the President's "records creation, management, and disposal decisions" are not subject to judicial review. *Id.* at 290-91. That holding requires dismissal of Plaintiffs' claims at the outset for lack of mandamus jurisdiction. It therefore renders Plaintiffs' claims unredressable, depriving Plaintiffs of standing, and precludes their claims for mandamus and declaratory relief.

Aside from *Armstrong*, which applies here because Plaintiffs' claims allege violations of the PRA, mandamus and declaratory relief against the President is broadly unavailable even outside the PRA context. The general unavailability of such relief against the President also makes Plaintiffs' claims unredressable and thus provides another basis for concluding that Plaintiffs lack standing. Indeed, the lack of jurisdiction to issue mandamus relief against the President by itself means that declaratory relief—which would depend on the availability of a private right of action under the Mandamus Act—is also precluded. In addition, the President's responsibilities under the PRA require the exercise of executive discretion and thus are not purely ministerial—another reason relief is unavailable. Finally, issuing relief against EOP, the Executive Office *of the*

*President*, rather than against the President himself, is not available here as an alternative avenue of redress that could confer standing. Because EOP has no statutorily-defined role with respect to the President's responsibilities under the PRA, its role derives solely from the President himself. Relief against EOP thus would implicate the same separation of powers concerns that prevent direct relief against the President. Plaintiffs' claims should be dismissed for lack of jurisdiction, whether because they are precluded under *Armstrong*, or because Plaintiffs lack standing.

## ARGUMENT

I. **THE PRA'S BAR ON JUDICIAL REVIEW MAKES PLAINTIFFS' CLAIMS UNREDRESSABLE AND APPLIES REGARDLESS OF THE NATURE OF THE ALLEGED DUTIES INVOLVED AND REGARDLESS OF THE IDENTITY OF THE DEFENDANT**

The D.C. Circuit in *Armstrong I* and *II* recognized that judicial review of the President's compliance with the PRA is precluded and that this bar specifically encompasses the President's adherence to 44 U.S.C. § 2203 in his "records creation, management, and disposal decisions." *See Armstrong I*, 924 F.2d at 290-91; *Armstrong v. Exec. Office of the President* ("*Armstrong II*")*,* 1 F.3d 1274, 1294 (D.C. Cir. 1993). Accordingly, as discussed in Defendants' prior briefing, Plaintiffs' claims here are barred in their entirety, whether they are framed as claims for mandamus or declaratory relief, or purport to arise under the Take Care Clause. *See* Def. Mem. [ECF 11-1] at 11-21, 26-29; Def. Reply [ECF 20] at 1-10, 18-20. The import of the *Armstrong* decisions is that the PRA not only fails to provide a private right of action itself, but it also impliedly precludes judicial review altogether. *See Armstrong I*, 924 F.2d at 290. This preclusion necessarily overrides any otherwise generally-available private right of action, including any claim for mandamus relief. *See CREW v. Trump*, 924 F.3d 602, 608 (D.C. Cir. 2019) (recognizing *Armstrong*'s bar as an "obstacle to mandamus relief"); *id.* at 609 (recognizing the bar on judicial review in *Armstrong I* as one factor "establish[ing] that CREW has no 'clear and indisputable right to [mandamus]

2

relief'"). Any contrary conclusion "would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional concerns," and in particular its "assiduous[] [effort] to minimize outside interference with the day-to-day operations of the President and his closest advisors and to ensure executive branch control over presidential records during the President's term in office"—the very concerns emphasized in *Armstrong I*. *Armstrong I*, 924 F.2d at 290.

The applicability of *Armstrong* serves to answer the Court's questions at the outset. Because Plaintiffs' claims are unreviewable, they are also, necessarily, unredressable. Plaintiffs therefore lack standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (identifying redressability as the third required element of standing, in addition to an injury-in-fact and a "causal connection between the injury and the conduct complained of"). The distinction between ministerial and discretionary duties has no bearing on *Armstrong*'s applicability. Moreover, the *Armstrong* bar applies equally to Plaintiffs' claims against EOP. *See Armstrong I*, 924 F.2d at 290 (applying bar to PRA-based claims against the National Security Council ("NSC")—an EOP component—as well as to those against President). Because Plaintiffs' claims are precluded in their entirety, the Court need not separately address the three issues identified in its Minute Order of November 18, 2019.

Nevertheless, as discussed below, should the Court address these issues without regard to *Armstrong*, it should similarly conclude that Plaintiffs' claims are precluded because (1) Plaintiffs lack standing to pursue declaratory or mandamus relief against the President; (2) the duties that Plaintiffs seek to enforce are official/executive in nature, and declaratory relief is in any event unavailable; and (3) Plaintiffs' injuries cannot be redressed by issuing remedies against EOP.

## II.  EVEN ASIDE FROM THE PRA BAR, PLAINTIFFS' CLAIMS FOR MANDAMUS AND DECLARATORY RELIEF ARE NOT REDRESSABLE

### A.  Plaintiffs Lack Standing To Seek Declaratory or Mandamus Relief Against the President

Defendants explained in prior briefing that—even aside from the specific context of this case, in which the claims at issue allege violations of the PRA—mandamus relief against the President is unavailable. *See* Def. Mem. at 25 (citing *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010)). This prohibition stems from the separation of powers concerns implicated by "'order[ing] [the President] to perform particular executive . . . acts at the behest of the Judiciary.'" *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part and concurring in the judgment)). In *Newdow*, the D.C. Circuit held that the plaintiffs lacked standing to seek declaratory and injunctive relief that would prohibit the inclusion of religious elements in future presidential inaugurations. *Newdow*, 603 F.3d at 1006. The court concluded that the plaintiffs' asserted injuries were not redressable because the "only apparent avenue of redress for plaintiffs' claimed injuries would be injunctive or declaratory relief against all possible President-elects and the President himself." *Id.* at 1013. The court further explained that "courts do not have jurisdiction to enjoin [the President], and have never submitted the President to declaratory relief." *Id.* (citing *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866), and *Franklin*, 505 U.S. at 827-28 (Scalia, J., concurring)). The court stressed that a "court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions." *Id.* at 1012.

This case presents a situation similar to that in *Newdow*. Plaintiffs seek declaratory and injunctive relief related to their claims that the President does not properly create or maintain records of his meetings with foreign leaders. *See* Compl. ¶¶ 72-106 & Prayer for Relief (pp. 37-39). In particular, they ask the Court to declare that the President has acted in violation of the PRA

and to compel the President to comply with the PRA. *See id.* Because, as the court in *Newdow* explained, such relief against the President is unavailable, however, *Newdow*, 603 F.3d at 1013, Plaintiffs' claims are not redressable, and Plaintiffs therefore lack standing.

### B. Declaratory Relief Against the President Is Unavailable Absent Mandamus Jurisdiction, Regardless of Whether PRA Duties Are Ministerial or Executive

For the same reasons that the Court cannot subject the President to mandamus, the Court also cannot issue declaratory relief against the President. Prior to the Supreme Court's decision in *Franklin*, the D.C. Circuit in *Nat'l Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974) ("*NTEU*"), had concluded that very limited relief might be ordered against the President in the form of a declaratory judgment that a "ministerial" act was required—there, that the President had a duty to implement a federal pay increase mandated by Congress. *Id.* at 616. However, after *Franklin*, the D.C. Circuit has "expressly cast doubt on any remaining viability" of such relief. *Lovitky v. Trump*, No. 19-cv-1454, 2019 WL 306844, at *9 (D.D.C. July 12, 2019), *appeal pending*, No. 19-5199 (D.C. Cir.) (explaining that "[w]hatever window that *NTEU* may have opened in this Circuit began to close with the Supreme Court's opinions in *Franklin*"). In *Swan v. Clinton*, the court recognized that "similar considerations" called into question the availability of either mandamus or declaratory relief against the President. *Swan*, 100 F.3d at 976 n.1; *cf. Franklin*, 505 U.S. at 827 (Scalia, J., concurring) ("For similar reasons, I think we cannot issue a declaratory judgment against the President.").

Well settled law regarding the availability of declaratory relief shows that the lack of mandamus jurisdiction also requires the conclusion that declaratory relief is unavailable. As explained in prior briefing, the Declaratory Judgment Act does not confer jurisdiction or provide a private right of action, so it cannot be invoked on its own. *See* Def. Mem. at 26-27 (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Ali v. Rumsfeld*, 649 F.3d 762, 778

(D.C. Cir. 2011)). The court's express recognition in *Newdow* that "courts do not have jurisdiction to enjoin" the President, *Newdow*, 603 F.3d at 1013, thus requires the conclusion that declaratory relief is also unavailable. Indeed, the D.C. Circuit in *NTEU* had also recognized that the availability of declaratory relief depended on the court's mandamus jurisdiction. *Cf. NTEU*, 492 F.2d at 616. The difference in *NTEU* was that the court there declined to grant mandamus relief as a matter of discretion. *See id*. Now that *Franklin* and later D.C. Circuit cases have recognized that mandamus jurisdiction does not lie against the President at all, no declaratory relief is available either.

Even if *Newdow* did not altogether preclude declaratory relief against the President, it clearly did so with respect to any responsibilities that qualify as "executive" or "discretionary."[1] The court in *Newdow* distinguished *Clinton v. City of New York*, 524 U.S. 417 (1998), where the Court held that the traceability and redressability prongs of standing were satisfied, because that case raised a challenge to the constitutionality of a statute—the Line Item Veto Act. *Newdow*, 603 F.3d at 1012. The declaratory relief that the court in *Clinton* deemed available was not a judgment against the President; rather, the court simply "struck down that statute," which removed any statutory power for the President to exercise. *See id.* Unlike *Clinton*, the *Newdow* case challenged "a decision committed to the executive discretion of the President or the personal discretion of the President-elect"—namely, whether to include certain religious elements in the inaugural ceremony. *See id.* The court held that declaratory relief addressing such decisions by the President was precluded. *Id.*

The bar on interference with the President's official responsibilities goes back at least to

---

[1] Indeed, even if the Court had mandamus jurisdiction, such jurisdiction is necessarily limited to ministerial acts. *See 13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (the "clear duty to act" for purposes of mandamus jurisdiction must be "ministerial and the obligation to act peremptory, and clearly defined" (internal quotation omitted)).

*Mississippi v. Johnson*, where the Supreme Court distinguished the "purely executive and political" duties that a President carries out as commander-in-chief, which the Court identified as "discretionary," from the "ministerial" duty imposed on a subordinate official that was at issue in *Marbury v. Madison*, 5 U.S. (1 Cranch.) 137 (1803). *Johnson*, 71 U.S. at 478, 498-99. The Court held that the judiciary should not interfere in the President's performance of such executive or discretionary actions. *See id.* at 499-500. At the same time, the Court did not suggest that it could appropriately compel the President to undertake a "ministerial" action either; rather, it called into question whether any action of the President could be deemed "ministerial." *See id.* at 499 (recognizing that where the President is responsible for supervising subordinates' performance of their duties, the President's duty is necessarily "executive and political" rather than "ministerial"). *Johnson* therefore leads back to the conclusion that declaratory relief against the President is entirely unavailable.

To the extent the distinction does matter, any declaratory relief against the President here would still be precluded because, as discussed in prior briefing, the recordkeeping responsibilities that the PRA confers upon the President are not ministerial duties. Def. Mem. at 24-25. "A duty qualifies as ministerial when it is 'so plainly prescribed as to be free from doubt and equivalent to a positive command.'" *Lovitky*, 2019 WL 3068344, at *12 (quoting *Consol. Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002)). "A ministerial duty is 'simple,' 'definite,' and leaves 'no room for the exercise of judgment.'" *Id.* (quoting *NTEU*, 492 F.2d at 607-08). The PRA directs the President to "take all such steps as may be necessary" to assure that his official activities are "adequately documented" and "maintained" in accord with the law. 44 U.S.C. § 2203(a). Nothing about this obligation is ministerial. Rather, the President's discretionary judgment is required to determine what documentation would be "adequate," and what steps will be "necessary," in a

7

particular circumstance. *Cf. Lovitky*, 2019 WL 3068344, at *13 (holding statutory requirement to include a "full and complete statement" of financial liabilities did not impose a ministerial requirement to distinguish personal from non-personal business liabilities). When it comes to the President's meetings with foreign leaders, the President's exercise of such judgment necessarily must take into account factors beyond recordkeeping itself, such as the President's power "to speak and bargain effectively with other nations," and thus to determine what kind of meeting would be best for that purpose. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 382 (2000). Such factors could affect decisions regarding the timing of documentation, or the choice of who will implement the recordkeeping responsibility. The President's responsibility in this area is similar to that recognized as discretionary in *Newdow*, and declaratory relief against the President with respect to such a responsibility is similarly barred.

### C. Relief Against EOP Is Also Unavailable

Courts in some other cases have allowed claims to proceed based on a determination that relief issued against a subordinate official might redress the plaintiff's injury, but such relief is not available here. In *Franklin*, the plurality concluded that the plaintiffs' challenge to the implementation of the census was likely redressable by relief against the Commerce Secretary, who, in the words of the *Newdow* court, "was obligated by statute to provide the President with a report of the nation's total population[,] which the President consults before sending his own statutorily required report to Congress showing the population of each state for purposes of apportioning the number of representatives in the House of Representatives." *Newdow*, 603 F.3d at 1013 (citing *Franklin*, 505 U.S. at 799). As the *Newdow* court further explained, "the Commerce Secretary was legally responsible for providing the President with advice and information on which he would base his final decision," and accordingly, "a plurality of the Supreme Court

thought declaratory relief applicable to the Secretary's legal duty would make it 'likely' the President would take the action desired by the plaintiffs, even if he was not obligated to do so." *Id.* (citing *Franklin*, 505 U.S. at 803 (plurality)).[2] In *Swan*, the D.C. Circuit held that relief requiring members of the Board of the National Credit Union Association ("NCUA") to treat a removed member as if he were still part of the Board could provide "de facto" relief. *Swan*, 100 F.3d at 980.

Here, although Plaintiffs have named EOP as a defendant in addition to the President, the injuries that Plaintiffs assert largely focus specifically on the President's own conduct and decisions in regard to his meetings with foreign leaders. *See generally* Compl. Moreover, Plaintiffs fail to identify any separate distinct role, much less any statutory role, of the EOP when it comes to the President's compliance with the PRA. Rather, EOP employees presumably take whatever action the President has assigned to them, based on their overall role to advise and assist the President.[3] The EOP's position is thus significantly different from those of the Commerce Secretary in *Franklin*, or the NCUA Board in *Swan*, both of which had specific, statutorily-defined key roles in the matter at issue in the case. In this case, the Court would not be directing EOP to carry out its own statutorily-defined duties but instead would be directing EOP to carry out the President's responsibilities—regardless of the President's views of what PRA compliance entails

---

[2] Justice Scalia disagreed with this assessment. *See Franklin*, 505 U.S. at 824 (Scalia, J., concurring in part) ("I do not think that for purposes of the Article III redressability requirement we are *ever* entitled to assume, no matter how objectively reasonable the assumption may be, that the President . . . in performing a function that is not wholly ministerial, will follow the advice of a subordinate official. The decision is by Constitution or law conferred upon him, and I think we are precluded from saying that it is, in practical effect, the decision of someone else.").

[3] The only EOP component that Plaintiffs specifically identify in their Complaint is the NSC. Compl. ¶¶ 64, 66. The D.C. Circuit has recognized that the NSC "exercises no authority of its own" but merely acts in an advisory capacity at the President's direction. *Armstrong v. EOP* ("*Armstrong III*"), 90 F.3d 553, 561 (D.C. Cir. 1996).

in a particular circumstance. The Court's issuance of mandamus or declaratory relief against EOP—which includes the President's closest advisers, such as those in the White House Office—as a means of controlling the President's conduct thus would raise the same separation of powers issues implicated by relief against the President himself. Plaintiffs therefore lack standing to assert their claims against EOP for the same reasons they lack standing to sue the President.[4]

## CONCLUSION

For the foregoing reasons and those set forth in Defendant's prior briefing, the Court should dismiss Plaintiffs' claims in their entirety, with prejudice.

Dated:  December 5, 2019                Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ Kathryn L. Wyer*
KATHRYN L. WYER
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC  20005
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*

---

[4] Plaintiffs also lack standing to assert their claims against EOP because they have not identified any injury fairly traceable to any action of EOP. To the contrary, EOP policy clearly requires compliance with the PRA. *See CREW v. Trump*, 924 F.3d. at 607 (recognizing that a 2017 White House memo does "just what the PRA requires" in directing White House personnel to preserve and  maintain Presidential records).