**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 19-cv-1333 (ABJ) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

Plaintiffs submit this Supplemental Brief in response to the Court's order directing the parties to address the Court's additional questions concerning the redressability of Plaintiffs' claims. *See* Minute Order (Nov. 18, 2019). Plaintiffs' responses to those questions are as follows: (1) Plaintiffs have standing to pursue declaratory or mandamus relief against the President of the United States; (2) the duties that Plaintiffs allege Defendants violated are ministerial and that distinction matters to determine whether the Court can issue the declaratory relief Plaintiffs seek in Claims Two through Four; and (3) at least some of Plaintiffs' alleged injuries would be redressed, at least in part, by issuing the requested remedies against the Executive Office of the President ("EOP"), but full relief likely will require also issuing the requested remedies against the President.

## 1. Plaintiffs have standing to pursue declaratory or mandamus relief against the President.

Plaintiffs have standing to bring this case. First, Defendants' failure to comply with the Presidential Records Act ("PRA") currently deprives Plaintiffs of access to agency records improperly categorized as presidential records and risks permanently depriving Plaintiffs and the American people of presidential records of the Trump administration's foreign policy actions and decisions. That Plaintiffs have suffered harm is not in dispute.[1] Second, the Court can redress these injuries by granting Plaintiffs declaratory or injunctive relief against the President and his subordinate officers, the element of standing on which the cases cited in the Court's order focuses.

---

[1] Plaintiffs' complaint sets forth the numerous harms each plaintiff has or will suffer in more detail, and Defendants have not challenged either those facts or Plaintiffs' standing more generally. In a prior, similar, case, Defendants conceded that a subset of these Plaintiffs had standing. Def. Reply Mem. in Supp. of Mot. to Dismiss at 3 n.1, *CREW v. Trump*, Civil No. 17-1228 (D.D.C. 2018).

While it is clear that courts may not enjoin a president's "purely executive and political" powers, a court may enjoin a president to perform purely "ministerial" duties, defined as those that are "imposed by law" and as "to which nothing is left to discretion." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498 (1867); *Nat'l Wildlife Fed. v. United States*, 626 F.2d 917, 923 (D.C. Cir. 1980) (writ of mandamus "not precluded because the federal official at issue is the President of the United States") (citing *Nat'l Treasury Employees Union*, 492 F.2d 587 (D.C. Cir. 1974)). The ministerial obligations the PRA imposes on the President fit squarely within this definition.[2]

No court has ruled out subjecting a president to mandamus or declaratory relief for violating ministerial obligations. For example, in *Franklin v. Massachusetts*, the Supreme Court explicitly recognized that it had "left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial' duty." 505 U.S. 788, 802 (1992). In that case the Court avoided the issue of "whether injunctive relief against the President was appropriate," because, as a plurality of the Court concluded, the injury the plaintiffs had alleged could be redressed through relief against the Secretary of Commerce alone. *Id.* at 803. Even Justice Scalia in his concurrence acknowledged that the Court previously had "left open the question of whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial' duty," *and that the President's duty at issue "was not that*." *Id.* at 826 n.2 (citations omitted) (emphasis added).

Four years later, in *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), the D.C. Circuit examined the redressability of a plaintiff's challenge to his removal from the National Credit Union Administration ("NCUA") brought against the president, a presidential assistant, and the

---

[2] That these are duties within the meaning of the Mandamus Act is equally clear given that they "result[] from an office, trust or station" of the President. *Lovitky v. Trump*, 918 F.3d 160, 163 (D.C. Cir. 2019) (citation and quotation omitted).

NCUA's director. As in *Franklin,* the court sidestepped the question of whether it had the authority to compel the president to perform a purely ministerial duty, finding that injunctive relief against subordinate officials could "substantially redress [the plaintiff's] injury." *Id.* at 980. The court held this was enough to establish redressability and standing. *Id.* at 981. Significantly, the court highlighted "the bedrock principle that our system of government is founded on the rule of law, and it is sometimes a necessary function to the judiciary to determine if the executive branch is abiding by the terms of legislative enactments." *Id*. at 978.

The third case referenced in the Court's order, *Newdow v. Roberts*, involved a constitutional challenge to certain religious language in the presidential inaugural ceremony. 603 F.3d 1002, 1006 (D.C. Cir. 2010). The court concluded the plaintiffs lacked standing on redressability grounds because they sought "relief with regard to unnamed defendants over whom this court has no jurisdiction." *Id.* at 1010. Further, the requested relief would not prevent the claimed harm because the named defendants "possess no authority—statutory or otherwise—to actually decide" whether or not to include the challenged language in future inaugural ceremonies. *Id.* at 1011. And while the Court stated in passing that courts lack authority to enjoin a president, *id.* at 1013, this is dicta given that the president was not a defendant in the suit and the cases cited in support for this proposition—*Mississippi*, 71 U.S. at 501, and *Franklin*, 505 U.S. at 827-28—expressly refrained from deciding the question of whether a president could be enjoined to perform a purely ministerial duty. *See id.*[3]

---

[3] A recent decision from this District, *Lovitky v. Trump*, No. 19-cv-1454 (CII), 2019 WL 3068344 (D.D.C. July 12, 2019), concluded that these cases send a "clear message" that a court "should not grant mandamus, injunctive, or declaratory relief against a sitting President to require performance of a ministerial duty." *Id.* at *10 (quotation and citation omitted). As discussed above, this conclusion is erroneous; *Franklin* and *Swan* left this issue open, and the contrary suggestion in *Newdow* is pure dicta.

The case before this Court raises the very concern recognized in *Swan*: if this Court cannot redress the President's failure to comply with the ministerial duties Congress imposed on him through the PRA we risk undermining "the bedrock principle that our system of government is founded on the rule of law." *Swan*, 100 F.3d at 978. In other contexts the Supreme Court has insisted that "long-settled" separation-of-powers principles make clear federal courts "ha[ve] the authority to determine whether [the president] has acted within the law." *Clinton v. Jones*, 520 U.S. 681, 703 (1997). As in those cases, determining whether the President is abiding by the terms of the PRA is "a necessary function of the judiciary." *Swan*, 100 F.3d at 978. Indeed, "[t]o deny inquiry into the President's power in a case like this, because of the damage to the public interest to be feared from upsetting its exercise by him, would in effect always preclude inquiry into challenged power." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 596 (1952) (Frankfurter, J. concurring).

These principles have particular force here, where the ministerial duties at issue are directed specifically at the President. Thus, while granting injunctive relief against the President may "raise[] judicial eyebrows," *Franklin*, 505 U.S. at 802, such action is necessary here to ensure that the PRA does not become a dead letter, effectively invalidated by the President's disregard of its requirements. "When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb . . . Courts can sustain exclusive presidential control in such a case only by disabling the Congress from acting upon the subject. Presidential claim to a power at once so conclusive and preclusive must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system." *Youngstown*, 343 U.S. at 637-38 (Jackson, J., concurring).

**2.      Because the duties Plaintiffs allege Defendants violated are ministerial the Court can issue the declaratory relief Plaintiffs seek.**

The PRA imposes ministerial obligations on the President. In particular, the President and EOP have ministerial duties to (1) adequately document the President's activities, decisions, and policies; (2) categorize records as presidential, agency, or personal according to the PRA and FRA; (3) preserve presidential records; and (4) notify the Archivist prior to disposal of presidential records. Because the requested declaratory relief in Claims Two, Three, and Four depends on mandamus jurisdiction, the existence of ministerial duties is determinative for the availability of this relief. Plaintiff's request for declaratory relief in Claim Five is premised on the Take Care Clause of the Constitution and does not depend on whether the duties at issue are ministerial.

A ministerial duty "is one that admits no discretion, so that the official in question has no authority to determine *whether* to perform the duty." *Swan*, 100 F.3d at 977 (emphasis added). Although the President has discretion to determine what might constitute adequate records, the President has no authority to determine *whether* to document his activities, classify such documents, and notify the Archivist before destroying presidential records. *See id*.

The PRA uses clear, mandatory terms. First, the statute provides that the President "*shall . . . assure* that the activities, deliberations, decisions, and policies that reflect the performance of [his] constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are preserved and maintained as Presidential records." 44 U.S.C. § 2203(a) (emphasis added). Next, the PRA requires that documents "*shall . . .* be categorized as Presidential records or personal records upon their creation or receipt." 44 U.S.C. § 2203(b) (emphasis added). Finally, "the President may dispose of those Presidential records . . . that no longer have administrative, historical, information, or evidentiary value *if*—the President obtains

the views, in writing, of the Archivist . . . and the Archivist states that the Archivist does not

intend to take any action [under the PRA]." 44 U.S.C. § 2203(c) (emphasis added).

The statute's use of the words "shall," "assure," and "if" leaves the President no

discretion to ignore these duties. *United States v. Monsanto*, 491 U.S. 600, 607 (1989) (finding

that by using "shall" in civil forfeiture statute, "Congress could not have chosen stronger words

to express its intent that forfeiture be mandatory in cases where the statute applied"); *United*

*Gov't Sec. Officers v. Chertoff*, 587 F. Supp. 2d 209, 219 (D.D.C. 2008) ("These regulations use

the words 'must' and 'shall,' respectively, leaving no discretion on the part of the agency."). The

entire PRA is predicated on documenting the President's activities and policies and classifying

such documents as presidential records. Thus, the entire Act would be rendered a nullity if the

President and EOP were permitted to refrain from creating records. The PRA should not be

interpreted to allow an end run around its strictures. *See United States v. Menasche*, 348 U.S.

528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a

statute' . . . rather than to emasculate an entire section." (*quoting Montclair v. Ramsdell*, 107

U.S. 147 (1882)).

The discretion granted to the President to determine *how* to implement the PRA does not

change the mandatory nature of its provisions. As the Supreme Court has explained, "[e]very

statute to some extent requires construction by the public officer whose duties may be defined

therein . . . But that does not necessarily and in all cases make the duty of the officer anything

other than a purely ministerial one." *Roberts v. U.S. ex rel. Valentine*, 176 U.S. 221, 231 (1900)

(quoted by *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 602 (D.C. Cir. 1974)).[4] Further,

---

[4] *See also Ganem v. Heckler*, 746 F.2d 844, 854 (D.C. Cir. 1984) ("discretion in the method by
which [an official] chooses to determine [compliance with the statute]" does not preclude
mandamus relief); *N. States Power Co. v. U.S. DOE*, 128 F.3d 754, 758 (D.C. Cir. 1997) (statute

the D.C. Circuit has explained that "a ministerial duty can exist even 'where the interpretation of the controlling statute is in doubt,' provided that 'the statute, once interpreted, creates a peremptory obligation for the officer to act.'" *Swan*, 100 F.3d at 978 (citation omitted).

Defendants' failure to execute their ministerial duties supports the mandamus relief requested, which in turn, provides a proper basis for declaratory relief. Although the Declaratory Judgment Act "is not an independent source of federal jurisdiction" and the availability of declaratory relief "presupposes the existence of a judicially remediable right," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 677 (1950)), a valid mandamus claim provides an independent source of jurisdiction that can sustain declaratory relief. *Nat'l Treasury Emps. Union*, 492 F.2d at 616. Thus, because "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff," *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983), the Court may grant both mandamus and declaratory relief.

In addition, Claim Five's request for declaratory relief is premised on the Take Care Clause of the Constitution and therefore does not depend on whether the duties at issue are ministerial. Although judicial review is unavailable "when a statute entrusts a discrete specific decision to the President and contains *no limitations* on the President's exercise of that authority," *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1331 (D.C. Cir. 1996) (emphasis

---

need not specify details of how statute should be complied with); *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 762 (D.C. Cir. 1980) (same); *Nat'l Treasury Emps. Union*, 492 F.2d at 602 (need to interpret statute does not make compliance discretionary); *CREW v. Exec. Office of the President*, 587 F. Supp. 2d 48, 63 (D.D.C. 2008) (same); *Judicial Watch v. Nat'l Energy Policy Dev.*, 219 F. Supp. 2d 20, 44 (D.D.C. 2002) (statute need not specify who is responsible for compliance).

added), judicial review is available where a statute provides limits on the President's actions. In such a case, the statute allows a reviewing court to determine whether the President has acted "consistently with the structure and purposes of the statute" at issue. *Id.* As a result, "courts will 'ordinarily presume that Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command.'" *Id.* at 1328 (D.C. Cir. 1996) (quoting *Bowen v. Mich. Academy of Family Phys.*, 476 U.S. 667, 681 (1986)).

3.      **Plaintiffs can obtain partial relief by securing the requested remedies against EOP, but Plaintiff's allegations, the substance of which must be assumed, are likely to require  remedies directed at the President for Plaintiffs to obtain full relief.**

Plaintiffs are seeking mandamus relief (Claim One) and declaratory relief (Claims Two, Three, and Four) against both the President and EOP for violating their ministerial recordkeeping obligations under the PRA, as well as declaratory relief against the President for violating his constitutional obligations under the Take Care Clause (Claim Five). While issuing the requested remedies against EOP would grant Plaintiffs partial relief for components of Claims One through Four, issuing the requested relief against the President may be necessary to grant Plaintiffs full relief for other components of Claims One through Four and all of Claim Five.

As discussed above, the PRA imposes ministerial recordkeeping duties on both the President and EOP. These obligations must be read in the context of other components of the PRA, including Congress' explicit judgment that "[t]he United States shall reserve and retain complete ownership, possession, and control of Presidential records; and such records shall be administered in accordance with the provisions of this chapter." 44 U.S.C. § 2202.

Plaintiffs have alleged violations of these ministerial recordkeeping duties that involve policies or patterns of conduct *personally* executed by the President in circumstances that appear

to also have prevented subordinate officials from fulfilling the President's ministerial recordkeeping duties under the PRA on his behalf. These include (1) confiscating notes of an interpreter who joined the President at a meeting with Russian President Vladimir Putin and directing the interpreter not to disclose what he or she had heard (Compl. ¶ 42); (2) excluding all executive branch employees (other than interpreters, when necessary) from meetings with certain foreign leaders (Compl. ¶¶ 49, 52); and (3) excluding presidential aides from certain telephone conversations with Putin (Compl. ¶ 55.). The President's categorical exemption of meetings and conversations with certain foreign leaders from the scope of the PRA violates his non-discretionary obligations to "assure that the activities, deliberations, decisions, and policies that reflect the performance of [his] constitutional, statutory, or other official or ceremonial duties are adequately documented and . . . preserved and maintained." 44 U.S.C. § 2203(a)." (Compl. ¶ 53.) Allowing the President to continue his blatant disregard for the requirements of the PRA risks undermining "the bedrock principle that our system of government is founded on the rule of law," *Swan*, 100 F.3d at 978, particularly when this Court "has the authority to determine whether [the president] has acted within the law," *Clinton*, 520 U.S. at 703.

Thus, although Plaintiffs would require discovery to determine the extent of the President's violation of the PRA and the extent to which subordinate officials also were prevented from complying with the PRA and FRA, the components of Claims One through Four that rely on the President's *personal* conduct appear likely to be redressable only through declaratory and injunctive relief against the President.[5] *See* Compl. ¶¶ 72, 74-76; *id.* ¶¶ 79, 81-

---

[5] For the purposes of determining redressability, the substance of Plaintiffs' claims must be assumed to be true. *Swan*, 100 F.3d at 976; *Catholic Soc. Serv.*, 12 F.3d at 1126. Unlike other presidents, Plaintiffs are unaware of any executive action President Trump has taken to delegate the ministerial duties Plaintiffs seek to enforce. *See, e.g.*, Executive Order 13489, Presidential Records, 74 FR 4669 (January 19, 2009) (establishing "policies and procedures governing the

83; *id.* ¶¶ 85-92; *id.* ¶¶ 96-98. Moreover, Claim Five addresses violations of the President's constitutional obligations under the Take Care Clause, Compl. ¶¶ 99-106, that are redressable only by issuing the requested relief against the President.

Plaintiffs acknowledge that asking this Court to entertain a request for declaratory or injunctive relief against the President of the United States is an extraordinary request of an Article III court. But this action, in which Plaintiffs allege that the President personally violated ministerial recordkeeping duties imposed on him by Congress and prevented subordinate officials from fulfilling those duties on his behalf, is just that. Congress enacted the PRA's mandate that the "United States shall reserve and retain complete ownership, possession, and control of Presidential records," 44 U.S.C. § 2202, in the wake of a constitutional crisis in which President Nixon threatened to destroy presidential records to obstruct a congressional impeachment investigation and attempted to retain presidential records as personal property following his resignation. To vindicate the will of Congress that presidential records are the property of the American people, 44 U.S.C. § 2202, and must be created, categorized, and preserved for them, 44 U.S.C. § 2203, the Court should find that Plaintiffs have standing to pursue declaratory or mandamus relief against both the President and EOP for their failure to comply with their ministerial recordkeeping duties under the Presidential Records Act.

Respectfully submitted,

| BAKER & MCKENZIE LLP | CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON |
|---|---|
| /s/ George M. Clarke III | /s/ Anne L. Weismann |
| George M. Clarke III, D.C. Bar No. 480073 | Anne L. Weismann, D.C. Bar No. 298190 |

---

assertion of executive privilege by incumbent and former Presidents in connection with the release of Presidential records"). Discovery would confirm whether the President has through means other than executive orders delegated any of his PRA obligations.

Mireille R. Oldak, D.C. Bar No. 1027998
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
Phone: (202) 835-6184
Fax: (202) 416-7184
Email: george.clarke@bakermckenzie.com
Email: mireille.oldak@bakermckenzie.com

Conor M. Shaw, D.C. Bar No. 1032074
1101 K Street., N.W., Suite 201
Washington, D.C. 20005
Phone: (202) 408-5565
Email: aweismann@citizensforethics.org
Email: cshaw@citizensforethics.org

*Counsel for Plaintiffs*

Dated: December 5, 2019